UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------------X

RAHMEL THOMPSON

                              Petitioner,

      -against-

JOHN B. LEMKE, Superintendent,
Five Points Correctional Facility,

                            Respondent.

----------------------------------------------------------------------X

08-cv-3426

<u>NOT FOR PRINT
OR ELECTRONIC
PUBLICATION</u>

OPINION AND ORDER

ROSS, United States District Judge:

On August 15, 2008, *pro se* petitioner, Rahmel Thompson, brought the instant action for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, challenging his conviction in the Supreme Court of the State of New York, Queens County, following a jury trial, of one count of murder in the second degree, one count of attempted robbery in the first degree, and criminal possession of a weapon in the second degree. See Pet. at 1 (Dkt. No. 1). Petitioner argues that he was denied effective assistance of trial and appellate counsel. Petitioner asserts that trial counsel was ineffective for (1) failing to call certain alibi witnesses, (2) failing to request a jury instruction concerning the voluntariness of petitioner's statements to law enforcement, and (3) failing to convey a plea-bargain offer to the petitioner. Petitioner asserts that appellate counsel provided constitutionally deficient representation by (1) raising an unpreserved argument on appeal, and (2) omitting several claims petitioner deems as meritorious. See id. at 3-6. For the reasons that follow, the petition is denied.

## BACKGROUND

A. Petitioner's Trial

On December 12, 2000, three males entered a store located at 21-17 Mott Avenue in Queens, New York to carry out a robbery. Mamadou Toure, the store owner, was present. When Mr. Toure resisted the robbery attempt, one of the individuals shot him twice, causing his death. The three men fled. Petitioner was arrested in Florida approximately eight months later, where he made two statements to the police admitting his participation in the attempted robbery. Petitioner, however, denied that he was the shooter.

Petitioner was charged with three counts of Murder in the Second Degree (Penal Law § 125.25[1], [2], [3]), Attempted Robbery in the First Degree (Penal Law §§ 110.00/160.15[3]); and Criminal Possession of a Weapon in the Second and Third Degrees (Penal Law §§ 265.03[2] and 265.02[4]). On December 17, 2002, a hearing was held in the Supreme Court, Queens County, on petitioner's motion to suppress the statements he had made to law enforcement. Petitioner's motion was denied. A jury trial was held on April 10-29, 2003.

At trial, along with additional testimony and evidence, the State presented the testimony of Maurice Gulley, one of the petitioner's alleged accomplices, who testified pursuant to a cooperation agreement in exchange for a plea bargain. Gulley testified to the planning and execution of the crime, identifying petitioner as the robber who owned the 9 mm gun used in the crime and who shot Mr. Toure. The State also called Frankie Serrano, who, pursuant to a cooperation agreement, testified that petitioner had admitted his participation in the charged crimes and displayed a 9 mm gun. Detective Conti testified regarding his search for petitioner, petitioner's arrest in Florida, and petitioner's statements, where petitioner admitted participation in the robbery, but denied being the shooter.

The jury returned a verdict acquitting petitioner of intentional murder and first-degree manslaughter, but convicting him of felony murder (Murder in the Second Degree (Penal Law § 125.25[2])), Attempted Robbery in the First Degree (Penal Law §§ 110.00/160.15[3]), and Criminal Possession of a Weapon in the Second Degree (Penal Law §§ 265.03[2]). Petitioner was sentenced to an indeterminate term of eighteen years to life incarceration for the murder conviction, and concurrent determinate terms of seven and four years' incarceration for the attempted robbery and criminal possession charges, respectively.

B. Petitioner's Direct Appeal

Petitioner appealed his conviction to the Appellate Division, represented by assigned appellate counsel, Bertrand J. Kahn, Esq., of the Appellate Advocates Office. Petitioner's brief, filed by counsel in August 2004, asserted a claim that petitioner was deprived of due process and a fair trial due to the prosecution's vouching for the truthfulness of two of its witnesses by allegedly stating or implying to the jury that the District Attorney had offered Gulley and Serrano cooperation agreements only in exchange for "truthful" testimony. Petitioner also submitted a *pro se* supplemental brief in which he raised an ineffective assistance of counsel claim, as well as a "repugnant verdict" claim. His ineffective assistance of counsel claim alleged four errors made by trial counsel: (1) asserting a defense inconsistent with the evidence presented at his suppression hearing; (2) failing to request a jury instruction concerning the voluntariness of petitioner's statements to the arresting officer; (3) failing to call alibi witnesses; (4) failing to object to the prosecutor's vouching for the two cooperating prosecution witnesses.

In a two-page order on May 23, 2006, the Appellate Division affirmed the judgment of conviction. The court held that the claim that the prosecution improperly vouched for the

3

veracity of two witnesses, by inquiring upon direct examination into the terms of their cooperation agreements, was unpreserved for appellate review, as the petitioner failed to object at trial to the challenged testimony. The court declined to review the claim in the exercise of its interest of justice jurisdiction. People v. Thompson, 29 A.D.3d 923 (2d Dept. 2006). The court also rejected petitioner's pro se claims, finding that he was afforded meaningful representation, and that the remaining challenge to the verdict was unpreserved for appellate review. Id. On July 20, 2006, petitioner's application for leave to appeal to the New York Court of Appeals was denied. People v. Thompson, 7 N.Y.3d 795, 821 N.Y.S.2d 825 (2006).

## C. Petitioner's Motion for Writ of Error Coram Nobis

On February 15, 2007, petitioner filed a *pro se* motion for writ of error *coram nobis*, raising a claim of ineffective assistance of appellate counsel. Petitioner argued that (a) appellate counsel had raised an unpreserved claim on appeal; (b) appellate counsel failed to raise several meritorious claims at petitioner's request, and (c) had failed to argue that petitioner had been denied effective assistance of counsel at trial. Specifically, petitioner stated that his appellate counsel should have made the following allegations about trial counsel: (1) that counsel failed to request a jury instruction concerning the voluntariness of petitioner's statements to the arresting officer; (2) that trial counsel failed to preserve a claim that the evidence was insufficient to support a conviction for depraved-indifference murder (3) trial counsel should have requested a jury instruction concerning petitioner's flight; and (4) that trial counsel was ineffective for failing to investigate or call alibi witnesses. The State opposed petitioner's motion, and submitted an affirmation from an David Greenberg, an attorney who supervised petitioner's appellate counsel, in response to the motion for *coram nobis* relief.

On May 29, 2007, the Appellate Division denied petitioner's motion for a writ of error *coram nobis*, finding in a one page order that he had failed to establish that he was denied effective assistance of appellate counsel. People v. Thompson, 40 A.D.3d 1134 (2d Dept. 2007). Petitioner sought leave to appeal to the New York Court of Appeals, and his request was denied on September 26, 2007. People v. Thompson, 9 N.Y.3d 927 (2007) (Ciparick, J.).

## D. Petitioner's Motion to Vacate the Judgment of Conviction

On November 15, 2007, petitioner filed a motion seeking an order vacating his judgment of conviction, pursuant to C.P.L. § 440.10. Petitioner argued that he had been deprived of effective assistance of counsel due to his trial attorney's failure to inform him of an alleged plea-bargain offer involving a sentence of ten years. The State responded on January 29, 2008, arguing that petitioner's claims were both procedurally barred and meritless. The State submitted affirmations of the trial prosecutor and petitioner's two trial attorneys which stated that a plea bargain promising a sentence of ten years' incarceration had never been offered.

On March 14, 2008, the Supreme Court, Queens County, denied petitioner's motion. The court found that in light of petitioner's submission and the affidavits of the prosecuting attorney and petitioner's trial attorneys, petitioner had not met his burden of showing that there was in fact a plea offer that was not conveyed to him. Thus, the court found that plaintiff had not been denied effective assistance of counsel. People v. Thompson, Indictment Number 328/02, Order of the Court (Mar. 14, 2008) (Blumenfeld, JSC.). Petitioner sought leave to appeal from the denial of his motion to the Appellate Division. That application was denied on July 17, 2008.

E.  The Current Petition

On August 15, 2008, petitioner filed a *pro se* petition for a writ of habeas corpus in this Court pursuant to 28 U.S.C. § 2254.  In an order dated August 28, 2008, this Court directed petitioner to show cause why the petition should not be dismissed as time barred under AEDPA's one-year statute of limitations. See Order at 1 (Dkt. No. 2).  Petitioner responded in an affirmation dated September 2, 2008, stating the time-line of his direct appeal and post-conviction collateral motions, and asserting that his petition was timely.  On September 12, 2008, the Court directed respondent to file a return to the petition showing cause why a writ of habeas corpus should not be issued.

Petitioner raises two claims.  First, petitioner argues that he was denied effective assistance of trial counsel, stating that trial counsel: (1) failed to call certain alibi witnesses, (2) failed to request a jury instruction regarding the voluntariness of petitioner's statements to the arresting officer; and (3) failed to convey an offer of a plea bargain for a sentence of ten years.  Second, petitioner argues that he was denied effective assistance of appellate counsel, stating that appellate counsel (1) raised a frivolous and unpreserved claim on appeal, and (2) omitted several colorable, non-frivolous issues that petitioner had urged counsel to raise.

The State argues that though the petition is timely, it should be denied.  The State maintains that petitioner has failed to demonstrate that the State court's rejection of his ineffective assistance of trial counsel claim was contrary to, or an unreasonable application of, clearly established federal law.  Second, the State argues that with respect to petitioner's claim of ineffective assistance of appellate counsel, petitioner has (1) failed to identify with specificity the alleged shortcomings of appellate counsel, and (2) failed to show that the State court's denial of this claim was contrary to, or an unreasonable application of, clearly established federal law.

**DISCUSSION**

A. AEDPA Standard of Review

The Anti-Terrorism and Effective Death Penalty Act ("AEDPA"), enacted in 1996,

established a deferential standard that federal habeas courts must apply when reviewing state

court convictions. 28 U.S.C. § 2254(d). The statute provides, in pertinent part:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant
> to the judgment of a State court shall not be granted with respect to any claim that was
> adjudicated on the merits in State court proceedings unless the adjudication of the claim-
>> (1) resulted in a decision that was contrary to, or involved an unreasonable
>> application of, clearly established Federal law, as determined by the Supreme
>> Court of the United States; or
>> (2) resulted in a decision that was based on an unreasonable determination of the
>> facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). The statutory language "clearly established Federal law, as determined by

the Supreme Court of the United States" refers to "the holdings, as opposed to the dicta, of [the

Supreme] Court's decisions as of the time of the relevant state-court decision." Williams v. Taylor,

529 U.S. 362, 412 (2000). A state court decision is "contrary to" clearly established Supreme

Court precedent if "the state court applies a rule that contradicts" Supreme Court precedent or if "the

state court confronts a set of facts that are materially indistinguishable from a decision of [the

Supreme] Court and nevertheless arrives at a result different from that precedent." Id. at 405-06.

With respect to the "unreasonable application" clause, "a federal habeas court . . . should ask

whether the state court's application of clearly established federal law was objectively reasonable."

Id. at 409. In determining whether an application was objectively unreasonable, "the most

important point is that an unreasonable application of federal law is different from an incorrect

application of federal law." Id. at 410. Interpreting Williams, the Second Circuit has added that,

although "[s]ome increment of incorrectness beyond error is required[,] . . . the increment need

not be great; otherwise, habeas relief would be limited to state court decisions so far off the mark

7

as to suggest judicial incompetence." Francis S. v. Stone, 221 F.3d 100, 111 (2d Cir. 2000)

(internal quotation marks and citations omitted). In addition, any determinations of factual

issues made by a state court "shall be presumed to be correct," and the petitioner shall have the

burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C.

§ 2254(e)(1). See Schriro v. Landrigan, 550 U.S. 465 (2007).

This deferential review of state court judgments is available only when the federal claim

has been "adjudicated on the merits" by the state court. Aparicio v. Artuz, 269 F.3d 78, 93 (2d Cir.

2001). If there is no such adjudication, the deferential standard does not apply, and "we apply the

pre-AEDPA standards, and review de novo the state court disposition of the petitioner's federal

constitutional claims." Id. (citing Washington v. Schriver, 255 F.3d 45, 55 (2d Cir. 2001)). For

the purposes of AEDPA, a state court "adjudicates" a petitioner's federal constitutional claims "on

the merits" whenever "it (1) disposes of the claim 'on the merits,' and (2) reduces its disposition to

judgment." Sellan v. Kuhlman, 261 F.3d 303, 312 (2d Cir. 2001). When a state court does so, a

federal habeas court must defer in the manner prescribed by AEDPA to the state court's decision

on the federal claim, even if the state court does not explicitly refer to either the federal claim or

relevant federal case law. Id.

To determine whether a state court has disposed of a claim on the merits, the court

considers: "(1) what the state courts have done in similar cases; (2) whether the history of the case

suggests that the state court was aware of any ground for not adjudicating the case on the merits;

and (3) whether the state court's opinion suggests reliance upon procedural grounds rather than a

determination on the merits." Id. at 314 (quoting Mercadel v. Cain, 179 F.3d 271, 274 (5th Cir.

1999)). In addition, a "conclusive presumption" that the state court decision "rest[s] on the merits of

the federal claim" applies to decisions "fairly appearing to rest primarily on federal law or to be

8

interwoven with federal law . . . [a]bsent a clear and express statement of reliance on a state procedural bar." Jimenez v. Walker, 458 F.3d 130, 138 (2d Cir. 2006) (holding that presumption of Harris v. Reed, 489 U.S. 255, 262-63 (1989), applies equally to both AEDPA-deference and procedural-bar determinations).


B. Petitioner's Claims

    1. *Ineffective Assistance of Trial Counsel*

    Petitioner asserts that he was denied effective assistance of trial counsel, stating that trial counsel: (1) failed to call certain alibi witnesses, (2) failed to request a jury instruction regarding the voluntariness of petitioner's statements to the arresting officer; and (3) failed to convey an offer of a plea bargain for a sentence of ten years. As discussed above, petitioner's first two claims were raised in his *pro se* brief on direct appeal and rejected by the Appellate Division. People v. Thompson, 29 A.D.3d 923 (2d Dept. 2006),[1] and his third claim was raised and rejected in a motion to vacate the judgment of conviction addressed to the Supreme Court, Queens County. People v. Thompson, Indictment Number 328/02, Order of the Court (Mar. 14, 2008) (Blumenfeld, JSC.). The State courts thus denied petitioner's claim on the merits, and this Court will apply a deferential standard of review. The State argues that the petitioner has failed to demonstrate that the State courts' rejection of these claims were contrary to, or an unreasonably application of, clearly established federal law.

    In order to demonstrate ineffective assistance of counsel, the petitioner must satisfy the two-pronged test established in Strickland v. Washington, 466 U.S. 668 (1984). Under Strickland, the petitioner must demonstrate, first, that counsel's performance fell below "an

---

[1] As stated above, petitioner's application for leave to appeal to the New York Court of Appeals was also denied. People v. Thompson, 7 N.Y.3d 795, 821 N.Y.S.2d 825 (2006).

objective standard of reasonableness" under "prevailing professional norms," id. at 688, and second, that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 698. In analyzing a claim that counsel's performance fell short of constitutional standards, the court must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Strickland, 466 U.S. at 689. Moreover, "[i]n assessing the attorney's performance, a reviewing court must judge his conduct on the basis of the facts of the particular case, 'viewed as of the time of counsel's conduct, and may not use hindsight to second-guess his strategy choices." Mayo v. Henderson, 13 F.3d 528, 533 (2d Cir. 1994) (quoting Strickland, 466 U.S. at 690). Thus, a petitioner cannot prevail on a claim of ineffective assistance merely because he disagrees with his counsel's strategy. See Strickland, 466 U.S. at 689. However, failure to pursue a particular course of action is not considered strategic when it is not a "conscious, reasonably informed decision made by an attorney with an eye to benefitting his client." See Pavel v. Hollins, 261 F.3d 210, 218 (2d Cir. 2001).

For the reasons set forth below, petitioner's claims with respect to ineffective assistance of trial counsel are denied.


i. Failure to Call Two Alleged Alibi Witnesses

Petitioner claims that an individual named Rasheeda Smith prepared a notarized affidavit attesting to the fact that she and her sister, Lasheeda Smith, were present on December 12, 2000 in the vicinity of where the underlying crime took place, and had a conversation with petitioner at the moment the gun was fired, placing him away from the scene of the crime. (Petr.'s Mem. at

3.)[2] He claims that he furnished trial counsel with a copy of this alibi statement. (Id.) Petitioner alleges that defense counsel entered these individuals on the defense witness list, but failed to call them to the stand during trial. (Id.) Petitioner argues that such testimony would have contradicted the testimony of the prosecution witnesses and his own statements made to the arresting officer, and thus failure to call the witnesses caused prejudice. (Id. at 3-4.)

At sentencing, one of petitioner's attorneys, Ann D'Elia, addressed the decision made by her and petitioner's second attorney, Andrew Worgan, not to call the two witnesses in question. (Sentencing Transcript at 4.) She stated:

> Now we spoke to–Mr. Worgan had spoken to these alleged alibi witnesses. It was Mr. Worgan's evaluation of them that they would be doing nothing more than [] declaring or committing perjury. We were not about to put people on the stand we believe were committing perjury. . . .

(Id.) Ms. D'Elia further stated that the statements of the alibi witnesses directly contradicted petitioner's sworn admission, statements made to the arresting officer, and the pre-trial hearing testimony. As a result, for "tactical reasons," the defense did not call the alibi witnesses. (Id.)

Petitioner responds that Ms. D'Elia and Mr. Worgan failed to provide an explanation as to why they suspected that the alibi witnesses would have committed perjury, and that offering the testimony would have served to counter the unfavorable statements offered by the prosecutor. (Petioner's Mem. In Supp. at 5.)

The Second Circuit has recognized that an attorney cannot be found ineffective for choosing against a potentially fruitful course of action if that action also entailed a "significant potential downside." Greiner v. Wells, 417 F.3d 305, 319 (2d Cir. 2005). The court stated that

---

[2] Petitioner has not provided the notarized affidavit to this Court, the affidavit is not in the State Court record before this Court, and it does not appear that the affidavit was ever made part of such a record. However, as discussed below, even if an affidavit from Ms. Smith states what petitioner alleges it to state, in light of trial counsel's on the record statements about the decision to not call the alleged alibi witnesses, there can be no finding of deficient performance by trial counsel.

'[c]ourts applying <u>Strickland</u> are especially deferential to defense attorneys' decisions concerning which witnesses to put before the jury." <u>Id.</u> at 323. The Second Circuit has also stated that, "[t]he decision not to call a particular witness is typically a question of trial strategy that [reviewing] courts are ill-suited to second-guess." <u>Id.</u> (quoting <u>United States v. Luciano</u>, 158 F.3d 655, 660 (2d Cir. 1998) (per curiam)); <u>see also</u> <u>Bennett v. Fischer</u>, 2006 WL 1084772, <u>aff'd</u>, 246 Fed.Appx. 761 (2d Cir. 2007); <u>Eze v. Senkowski</u>, 321 F.3d 110, 129 (2d Cir. 2003) (the failure to call a witness usually falls under the realm of trial strategy that courts are reluctant to disturb, particularly where the failure to call the witness was grounded in some strategy that advanced the client's interest); <u>United States v. Neresian</u>, 824 F.2d 1294, 1321 (2d Cir. 1987) (the decision whether to call witnesses on behalf of the defendant and which witnesses to call is a tactical decision of the sort engaged in by defense attorneys in almost every trial). Additionally, "the Sixth Amendment does not require that counsel do what is impossible or unethical." <u>U.S. v. Cronic</u>, 466 U.S. 648 (1984); <u>see also</u> N.Y. Code of Prof. Resp., DSR7-102(A)(4) (In the representation of a client, a lawyer shall not "[k]nowingly use perjured testimony . . . ").

In this case, trial counsel is on record as stating that the defense had spoken with the two potential witnesses and believed they were "doing nothing more than . . . committing perjury." (Sentencing Transcript at 4.) In addition, citing petitioner's prior testimony at his suppression hearing and the defense's trial strategy, trial counsel stated that she believed the jury would not have believed the testimony of the alibi witnesses. Trial counsel thus cited "tactical as well as ethical reasons" for not calling the alibi witnesses. (<u>Id.</u>)

Trial counsel thus did not act in a deficient manner. As a result, this Court cannot find that the state courts' denial of petitioner's ineffective assistance of counsel claim on this ground was an unreasonable application of Supreme Court law.

12

ii. Failure to Request a Jury Instruction Regarding Voluntariness

Petitioner alleges that during his interrogation following his arrest in Florida, he was coerced into making two statements in which petitioner admitted participation, but denied that he was the shooter. (Petr.'s Mem. at 6.) The trial court held a Wade/Huntley hearing following a motion to suppress these statements, and the motion to suppress was denied. These statements were submitted to the jury by the prosecution. (People's Summation at 483.) Petitioner claims that defense counsel failed to assert that the statements had "weak probative value," and furthermore, failed to request a jury charge contesting the voluntariness of the admission statements. (Petr.'s Mem. at 7.) Petitioner asserts that this failure, compounded with the failure to call alibi witnesses, resulted in prejudice. (Id. at 7-8.)

"Actions or omissions by counsel that might be considered sound trial strategy do not constitute ineffective assistance." Henry v. Poole, 409 F.3d 48, 63 (2d Cir.2005) (internal citations omitted); see also Strickland, 466 U.S. at 689 (defendant has burden of overcoming presumption that attorney's actions "might be considered sound trial strategy").

As the State points out, it is clear from the record that trial counsel did not mistakenly neglect to request a jury instruction concerning the voluntariness of petitioner's statements, rather, trial counsel specifically declined one. During the charge conference, Mr. Worgan stated:

'I think at the beginning of the trial we had mentioned to the Court that we would ask the Court to charge the jury that the defendant is contesting the voluntariness of his statement. We are withdrawing that. We don't believe that's an issue. Actually, we like the statement the way it is." (Charge Conference at 371.)
Based on the record, the strategy at trial was to convince the jury that though petitioner had been present at the scene, he had fled prior to the shooting of the victim. (Defense Opening at 27.) The defense alluded to these statements as being consistent with that strategy during its opening, and declining a charge of the statements' voluntariness is consistent with that strategy.

13

Thus, petitioner has not met his burden of showing that the declining of the jury charge was not part of a sound trial strategy, nor has he met his burden that such an action compounded with the failure to call the alleged alibi witnesses rose to the level of ineffective assistance. Accordingly, petitioner has not shown that the state courts' denial of this claim was contrary to clearly established federal law.

### iii. Failure to Inform Petitioner of an Alleged Plea Offer

Plaintiff also alleges that his trial counsel failed to advise him about an offer of a plea bargain for a sentence of ten years. Petitioner points to an affidavit from Brenda L. Thompson, petitioner's mother, in which she states that Mr. Worgan and Ms. D'Elia had communicated to her that"there was a plea offer of 10 years being offered to" petitioner. (Aff. of Brenda Thompson at 1.) Ms. Thompson states that her two daughters, her sister, and her nephew were all present during the conversation at the courthouse where the plea offer was discussed. (Id.) Ms. Thompson states that"it was mentioned in a[n] offhand fashion and I didn't have an opportunity to speak with my son that day so I did not mention it or discuss it with him and it honestly never occurred to me that he was not aware [of] the fact that a plea offer had been made." (Id.) Petitioner purportedly learned of the alleged plea offer from his mother during a visit in 2007, at which point petitioner filed a motion seeking an order vacating his judgment of conviction, pursuant to C.P.L. § 440.10.

During those proceedings, the State submitted an affidavit of Mr. Worgan, in which he stated that to the best of their recollection,"there were no plea offers made during the trial in this case, and certainly not an offer of ten years." (Aff. of Andrew Worgan, ¶ 2.) The state also submitted an affidavit of Ms. D'Elia, who expressed with more certainty that"[a]t no time during

14

Mr. Thompson's trial was any such offer ever made, and certainly not an offer of ten years." (Aff. of Anne D'Elia, ¶ 2.) Both attorneys state that if an offer had been made, they would have informed him of such an offer, and Ms. D'Elia states that she would have in fact encouraged petitioner to accept such an offer. Additionally, Ms. D'Elia states that petitioner's contention is "utterly absurd," as his co-defendants received sentences of 22 years and 12 years, respectively, and because the State had maintained that petitioner was the "actual shooter," it would never have offered a lesser sentence. (Id. at n.1.) The State also provided an affidavit of John Kosinski, the Assistant District Attorney who prosecuted petitioner, which states that "there were absolutely no plea offers made during the trial of this case." (Aff. of John Kosinski, ¶ 2.)

The Supreme Court, Queens County stated that petitioner's "self-serving statement, without more," was insufficient to demonstrate that a plea offer was actually made by the prosecution, and thus the petitioner could not prevail on an ineffective assistance of counsel claim. People v. Thompson, Indictment Number 328/02, Order of the Court (Mar. 14, 2008) (Blumenfeld, JSC.). Relying on the affidavits submitted by the State, the court found that defense counsel were not in possession of any plea offer to convey to the petitioner. The court thus denied the motion to vacate.

It is well established that "counsel must always communicate to the defendant the terms of any plea bargain offered by the prosecution." Cullen v. United States, 194 F.3d 401, 404 (2d Cir. 1999). Failure to do so constitutes deficient performance. Id. In order to show prejudice, however, the petitioner must show that there is a "reasonable probability" that he would have accepted the plea offer. Id. at 405. Generally, the Second Circuit "requires some objective evidence other than defendant's assertions to establish prejudice." Pham v. United States, 317 F.3d 178, 182 (2d Cir. 2003). However, the state court's factual finding with respect to the existence

15

of a plea offer is presumed to be correct. 28 U.S.C. § 2254(e)(1) ("[A] determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.").

In the instant case, petitioner's assertion that his attorneys did not inform him of an allegedly proffered plea agreement rests solely upon "conclusory and/or self-serving affidavits." See Rosario-Dominguez v. United States, 353 F.Supp.2d 500, 520 (S.D.N.Y., 2005). In contrast, petitioner's trial counsel as well as the Assistant District Attorney have submitted "detailed affidavit[s] . . . credibly describing the circumstances" surrounding the alleged plea negotiations. Chang v. United States, 250 F.3d 79, 85 (2d Cir.2001). Because petitioner has not met his burden with respect to showing that a plea agreement *actually* existed, the state court cannot be said to have acted contrary to, nor did it unreasonably apply, the Strickland standard for ineffective assistance of counsel. Additionally, no testimonial hearing is required on this issue. 28 U.S.C. § 2254(e)(2); Rosario-Dominguez, 353 F.Supp.2d at 520 (no testimonial hearing is required because it "would add little or nothing to the written submissions") (internal citations omitted). Accordingly, petitioner's third claim regarding his trial counsel's deficient performance is also rejected.


2. *Ineffective Assistance of Appellate Counsel*

Petitioner additionally claims that he was denied effective assistance of appellate counsel. Petitioner claims that appellate counsel, Bertrand J. Kahn, was ineffective because he (1) raised an unpreserved claim on appeal, and (2) omitted several colorable, non-frivolous issues that petitioner had urged him to raise.

A criminal defendant has a right to the effective assistance of counsel on a first appeal as of right. Evitts v. Lucey, 469 U.S. 387, 396 (1985). When a defendant challenges the adequacy of representation by such appellate counsel, a court must review his claim under the standards for review of the performance of trial counsel. Abdurrahman v. Henderson, 897 F.2d 71, 74 (2d Cir.1990). That is, to prevail on a claim of ineffective assistance of appellate counsel, a defendant must demonstrate that his attorney's "representation fell below an objective standard of reasonableness" and that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 687-88, 694. Furthermore, a petitioner who bases his challenge to the effectiveness of his representation on strategic choices made by that attorney undertakes a particularly formidable task, as the court "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." United States v. Aguirre, 912 F.2d 555, 560 (2d Cir. 1990) (quoting Strickland, 466 U.S. at 680, 690-91).

### i. Raising an Unpreserved and "Frivolous" Issue on Appeal

Petitioner claims that Mr. Kahn was ineffective for raising the issue of the prosecution's improper vouching for its witnesses, Mr. Gulley and Mr. Serrano, although the claim was both frivolous and unpreserved for review. (Petr.'s Mem. at 13.) Petitioner contends that the claim's frivolousness is evident from the fact that the jury found him not guilty of the intentional murder and first-degree manslaughter charges which would have implicated him as the shooter, showing that the jury had rejected the testimony of the two witnesses. Additionally, petitioner notes that trial counsel failed to preserve this claim for appellate review, and that the raising of the claim by appellate counsel in and of itself constituted deficient performance, as appellate counsel failed to

exercise the customary skill and diligence that a reasonably competent attorney would exhibit under similar circumstances. Petitioner further asserts that he suffered prejudice when the Appellate Division found the claim to be unpreserved and declined to exercise its interest of justice jurisdiction. (Petr.'s Mem. at 14.) Respondent argues that appellate counsel's decision to raise only the claim of prosecutorial misconduct clearly fell within the wide range of professional assistance entrusted to attorneys.

The appellate brief submitted by the petitioner's attorney on appeal demonstrates awareness that the issue raised had not been preserved by trial counsel. Appellate counsel, with reference to appropriate New York case law, stated that "[a]lthough the vouching in this case was not protested, we submit that the seriousness of the error and its impact warrant reversal in the interest of justice." (Brief for the Defendant-Appellant, August 2004 at 23.) As such, the petitioner's characterization of his appellate attorney as failing to exercise the customary skill and diligence that a reasonably competent attorney would exhibit is misguided. This court cannot conclude that the decision by appellate counsel to raise an unpreserved issue on appeal and to address this issue to the "interest-of-justice" jurisdiction of the appellate court constituted "representation ... below an objective standard of reasonableness." See Richburg v. Hood, 794 F.Supp. 75, 78 (E.D.N.Y., 1992) (finding that appellate counsel's performance did not fall below an objective standard of reasonableness where appellate counsel's brief showed an awareness that the issue raised had not been preserved by trial counsel, but requested that the appellate court "use its discretionary jurisdiction to reverse in the interest of justice.")

With respect to the claim's frivolousness, this Court "may not use hindsight to second-guess [appellate counsel's] strategy choices." Mayo, 13 F.3d at 533 (2d Cir. 1994) (quoting Strickland, 466 U.S. at 690). While perhaps not compelling, the Court cannot say that pursuing

such a claim was not a "conscious, reasonably informed decision made by an attorney with an eye to benefitting his client." See Pavel v. Hollins, 261 F.3d 210, 218 (2d Cir. 2001). Accordingly, the state court did not act contrary to clearly established federal law when dismissing this claim, and thus petitioner's instant claim lacks merit.

### ii. Failing to Raise "Meritorious" Issues on Appeal

Petitioner further alleges that appellate counsel failed to raise "several, colorable, non-frivolous issues at the insistence of petitioner." (Petr.'s Mem. at 5.) Specifically, petitioner alleges that appellate counsel: (1) failed to raise the claim that trial counsel erred by not calling two alleged alibi witnesses, (2) failed to raise the claim that trial counsel erred by failing to request a jury instruction as to the voluntariness of his statements to the arresting officer, and (3) failed to raise the claim that trial counsel did not request a presumption of innocence charge with regards to flight. (Petr.'s Mem. at 10.)[3]

In attempting to show that appellate counsel's failure to raise a state law claim amounted to deficient performance, it is not enough for a petitioner to merely demonstrate that counsel omitted a non-frivolous argument. Counsel is under no duty to advance every colorable argument that could be made in light of the facts of petitioner's case. Pratt v. Upstate Correctional Facility, 413 F.Supp.2d 228 (W.D.N.Y., 2006); Mayo, 13 F.3d at 533 (citing Jones v. Barnes, 463 U.S. 745, 754 (1983)). "To establish prejudice in the appellate context, a petitioner must demonstrate that 'there was a "reasonable probability" that [his] claim would have been successful before the [state's highest court]." Id. at 534 (internal quotations omitted).

---

[3] The State alleges that petitioner has failed to identify with specificity, the alleged shortcomings of appellate counsel. (Resp.'s Mem. at 17.) However, petitioner makes specific references to three claims his appellate counsel did not raise on direct appeal, and alleges that the omission of such claims renders appellate counsel's performance deficient. (Petr.'s Mem. at 10-13.)

With respect to petitioner's first two claims, I have already found above that petitioner's trial counsel performed adequately, and "there can be no claim of ineffective assistance of appellate counsel where the underlying claims of ineffective assistance of trial counsel are themselves meritless." Rolling v. Fischer, 433 F.Supp.2d 336, 351 (S.D.N.Y., 2006). Additionally, these two claims were presented on direct appeal by petitioner to the Appellate Division in his supplemental *pro se* brief, and were rejected. People v. Thompson, 29 A.D.3d 923 (2d Dept. 2006).

I make a similar finding with respect to petitioner's third claim. Petitioner states that the Assistant District Attorney made remarks during trial regarding the fact that he was arrested in Pensacola, Florida, and implied that he had fled for the purposes of avoiding apprehension, specifically during opening and summation. (People's Opening at 23; People's Summation at 521.) He further claims that his trial counsel did not offer proof of his legitimate reasons for being in Florida, nor did they request a jury instruction specifying that where there is evidence of flight, and two inferences can be drawn from defendant's conduct, one consistent with the consciousness of guilt and one consistent with an innocent purpose, the jury is to draw that inference consistent with the innocent purpose. (Petr.'s Mem. at 12.)

"It is well-settled that both the prosecution and defense are entitled to broad latitude in the inferences they may suggest to the jury during closing arguments, provided they do not misstate the evidence, refer to facts not in evidence, or express counsel's personal belief as to guilt or innocence." United States v. Smith, 778 F.2d 925, 929 (2d Cir.1986) (internal quotations and citations omitted). Additionally, evidence of flight is admissible in New York as circumstantial evidence of consciousness of guilt. People v. Lendore, 36 A.D.3d 940 (2d Dept. 2007).

While under New York law, a trial court may give a jury instruction on a defendant's flight where there is evidence of flight, People v. Yazum, 13 N.Y.2d 302, 304, 246 N.Y.S.2d 626 (1963), courts have granted habeas relief for a failure to provide a jury instruction on a particular matter where the evidence supported such an instruction under state law, and where the erroneous failure to give such an instruction was *sufficiently harmful to make the conviction unfair*. Davis v. Strack, 270 F.3d 111, 123-24 (2d Cir.2001) (citing Cupp v. Naughten, 414 U.S. 141, 146 (1973)) (emphasis added); see also Warren v. Napoli, 2009 WL 2447757, *14 (S.D.N.Y., 2009) (finding that petitioner's contention that his trial attorney provided ineffective assistance to him by failing to request a jury instruction from the court regarding flight as an indication of guilt, based upon the prosecutor's comments, during opening and closing statements, is without merit). Petitioner has not shown that failure to instruct the jury on this matter was sufficiently harmful to make the conviction unfair, particularly in light of the remainder of the proof against the petitioner. Such a decision appears from the record to have been strategic, given that the defense argued that petitioner "fled" from the scene prior to the shooting and not because he was guilty of the relevant crime, or that the defense sought not to remind the jury that petitioner had left the state and was not arrested until eight months following the event. Given that trial counsel performed adequately, "there can be no claim of ineffective assistance of appellate counsel where the underlying claims of ineffective assistance of trial counsel are themselves meritless." Rolling, 433 F.Supp.2d at 351. Petitioner has thus failed to show that the state court acted contrary to, or unreasonably applied, clearly established federal law. Accordingly, petitioner's third argument with respect to his ineffective assistance of appellate counsel claim is denied.

## CONCLUSION

For the reasons stated above, the petition for a writ of habeas corpus is denied. Because

petitioner has failed to make a "substantial showing of the denial of a constitutional right," 28

U.S.C. § 2253(c)(2) (1996), no certificate of appealability will be granted. The Clerk of Court is

directed to enter judgment accordingly.


SO ORDERED.


                                            /S/
                                    _____
                                    Allyne R. Ross
                                    United States District Judge


Dated:         November 23, 2009
               Brooklyn, New York

<u>Service List</u>

**Petitioner (pro se):**

Rahmel Thompson
03A3043
Five Points Correctional Facility
State Route 96
P.O. Box 119
Romulus, NY 14541

**Respondent:**

Karen Wigle Weiss
Queens County District Attorney's Office
125-01 Queens Boulevard
Kew Gardens, NY 11451